

Mark P. Robinson, Jr., Esq. CA Bar # 054426
Daniel S. Robinson, Esq. CA Bar # 244245
Karen L. Karavatos Esq. CA Bar #131718
Karren Schaeffer, Esq. CA Bar #116189
Shannon Lukei, Esq. CA Bar #202868
**ROBINSON, CALCAGNIE & ROBINSON**
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
949-720-1288; Fax 949-720-1292
mrobinson@rcrlaw.net; drobinson@rcrlaw.net;
kkaravatos@rcrlaw.net; kschaeffer@rcrlaw.net;
slukei@rcrlaw.net

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA



| | |
|---|---|
| CHINELLA HILL,<br><br>             Plaintiff,<br><br>vs.<br><br>MCKESSON CORPORATION; BAYER CORPORATION; BAYER HEALTHCARE LLC; BAYER PHARMACEUTICALS CORPORATION; BAYER HEALTHCARE PHARMACEUTICALS INC.; BERLEX LABORATORIES, INC., BERLEX, INC.; BAYER SCHERING PHARMA AG; BAYER AG; BARR LABORATORIES, INC.; TEVA PHARMACEUTICALS USA, INC. and DOES 1 through 100, Inclusive,<br><br>             Defendants. | Case No. CV 10 2184<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>1.  Negligence<br>2.  Strict Liability -- Manufacturing Defect<br>3.  Strict Liability-Failure to Warn<br>4.  Breach of Express Warranty<br>5.  Breach of Implied Warranty<br>6.  Intentional Misrepresentation/ Deceit<br>7.  Negligent Misrepresentation/Concealment<br>8.  Fraud<br>9.  Violation of Cal. B&P Code §17200<br>10.  Violation of Cal. B&P Code §17500<br>11. Violation of Cal. Civil Code §1750 et seq. |

COMES NOW Plaintiff CHINELLA HILL, and files this Complaint seeking judgment against Defendants MCKESSON CORPORATION; BAYER CORPORATION; BAYER HEALTHCARE LLC; BAYER PHARMACEUTICALS CORPORATION; BAYER HEALTHCARE

1

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  PHARMACEUTICALS INC.; BERLEX LABORATORIES, INC., BERLEX, INC.; BAYER

2  SCHERING PHARMA AG; BAYER AG; BARR LABORATORIES, INC.; TEVA

3  PHARMACEUTICALS USA, INC. AND DOES 1-100 inclusive, for injuries and damages caused by

4  Ocella, a combination oral contraceptive prescription medication and, in support thereof, states and

5  alleges as follows:

6     1.     Plaintiff CHINELLA HILL (hereinafter "Plaintiff") was injured as a proximate and

7  direct result of using the prescription contraceptive medication product(s) titled Ocella (hereinafter the

8  "Product"), designed, developed, marketed, advertised and distributed by Defendants herein.

9     2.     The Product is a combination oral contraceptive that contains two active ingredients:

10  Drospirenone (a progestin); and Ethinyl Estradiol (an estrogen).

11     3.     As is more fully set forth herein below, Plaintiff used the Product as directed, and after

12  using said product, Plaintiff suffered serious and life-threatening side effects including, but not limited

13  to, organ failure, gallbladder failure, and cholecystectomy.

14     4.     Plaintiff has further incurred medical expenses, endured pain and suffering, sustained

15  loss of earnings as well as loss of earning capacity and other damages and losses as a direct and

16  proximate result of Defendants' acts and omissions as alleged herein. Plaintiff seeks general,

17  compensatory, special and punitive damages from the Defendants due to injuries caused by the Product

18  and alleges that Defendants' acts and omissions were committed with knowing, conscious, reckless,

19  deliberate and grossly negligent disregard for the rights and safety of consumers, including the Plaintiff

20  herein, thereby entitling the Plaintiff to punitive damages in an amount appropriate to punish the

21  Defendants and deter them from similar conduct in the future. As is more fully set forth below,

22  Defendants' wrongful and negligent acts and omissions caused Plaintiff's injuries and damages.

23     5.     Plaintiff is and, at all relevant times alleged herein, was an individual citizen of the

24  United States, a resident of Clarke County of the State of Alabama. Plaintiff suffered severe injuries

25  and damages as alleged herein as a direct and proximate result of using the Product, all in an amount far

26  in excess of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. Therefore, the

27  amount in controversy in this matter greatly exceeds Seventy-Five Thousand Dollars ($75,000),

28

2

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    exclusive of interest and costs, in an exact amount according to proof at the time of trial.

2         6.     Defendant BAYER CORPORATION is, and at all times relevant was, a corporation

3    organized under the laws of the State of Indiana with its headquarters and principal place of business at

4    100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

5         7.     At all times relevant, Defendant BAYER CORPORATION was engaged in the business

6    of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing

7    the Product into interstate commerce, including in the State of California, either directly or indirectly

8    through third parties, subsidiaries or related entities.

9         8.     Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited

10   liability corporation organized under the laws of the State of Delaware with its headquarters and

11   principal place of business at 100 Bayer Road, Pittsburg, PA 15205.

12        9.     At all times relevant, Defendant BAYER HEALTHCARE LLC was engaged in the

13   business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or

14   introducing the Product into interstate commerce, including in the State of California, either directly or

15   indirectly through third parties, subsidiaries or related entities.

16        10.    Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER

17   CORPORATION.

18        11.    Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant

19   was, a corporation organized under the laws of the State of Delaware with its headquarters and

20   principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

21        12.    At all times relevant, Defendant BAYER PHARMACEUTICALS CORPORATION was

22   engaged in the business of developing, designing, licensing, manufacturing, distributing, selling,

23   marketing, and/or introducing the Product into interstate commerce, including in the State of California,

24   either directly or indirectly through third parties, subsidiaries or related entities.

25        13.    As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION

26   was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

27        14.    Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is and at times

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  relevant was, a corporation organized and existing under the laws of the State of Delaware, having a
2  principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-
3  1000.

4     15.    Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known
5  as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate
6  entity as Berlex Inc. and Berlex Laboratories, Inc.

7     16.    At all times relevant, Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.
8  was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling,
9  marketing, and/or introducing the Product into interstate commerce, including in the State of California,
10  either directly or indirectly through third parties, subsidiaries or related entities.

11    17.    Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of
12  approved New Drug Application ("NDA") for Yasmin.

13    18.    Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times
14  relevant were, foreign corporations with their headquarters and principal places of business at
15  Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045
16  and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

17    19.    Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into
18  Bayer HealthCare AG and operate as an integrated specialty pharmaceuticals business under the new
19  name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

20    20.    At all times relevant, Defendants BERLEX LABORATORIES, INC. and BERLEX,
21  INC. were engaged in the business of developing, designing, licensing, manufacturing, distributing,
22  selling, marketing, and/or introducing the Product into interstate commerce, including in the State of
23  California, either directly or indirectly through third parties, subsidiaries or related entities.

24    21.    Defendant BAYER SCHERING PHARMA AG, formerly known as Schering AG, is a
25  pharmaceutical company that is organized and existing under the laws of the Federal Republic of
26  German, having a principal place of business at Müllerstrasse 178, 13353 Berlin, Germany.

27    22.    Defendant BAYER SCHERING PHARMA AG is a corporate successor to Schering

28

4

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  AG.

2     23.    Schering AG was renamed BAYER SCHERING PHARMA AG effective December 29,

3  2006.

4     24.    Defendant BAYER SCHERING PHARMA AG'S headquarters and principal place of

5  business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

6     25.    At all times relevant, Defendant BAYER SCHERING PHARMA AG was engaged in

7  the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or

8  introducing the Product into interstate commerce, including in the State of California, either directly or

9  indirectly through third parties, subsidiaries or related entities.

10    26.    Defendant BAYER AG is a German chemical and pharmaceutical company that

11 is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

12    27.    Defendant BAYER AG is the third largest pharmaceutical company in the world.

13    28.    Defendant BAYER AG is the parent/holding company of all other named Defendants.

14    29.    Defendant BAYER AG's headquarters and principal place of business in the United States

15    is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

16    30.    At all times relevant, Defendant BAYER AG was engaged in the business of developing,

17 designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing the Product

18 into interstate commerce, including in the State of California, either directly or indirectly through

19 third parties, subsidiaries or related entities.

20    31.    Defendant McKesson Corporation is a Delaware Corporation with its principal place of

21 business at One Post Street, San Francisco, California 94104. Defendant McKesson Corporation is

22 authorized to do business in the state of California and is engaged in substantial commerce and business

23 activity in San Francisco County.

24    32.    At all times relevant hereto, Defendant McKesson Corporation was engaged in the

25 business of researching, designing, developing, licensing, compounding, testing, producing,

26 manufacturing, assembling, processing, packaging, inspecting, labeling, selling and/or warranting the

27 Product in the State of California.

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

33.     Defendant BARR LABORATORIES, INC. is a Delaware Corporation with its principal place of business located at 225 Summit Avenue, Montvale, New Jersey 07645.

34.     Defendant BARR LABORATORIES, INC. is a division of Teva Pharmaceutical Industries Ltd., one of the largest generic pharmaceutical companies in the world.

35.     At all times relevant hereto, Defendant BARR LABORATORIES, INC. was engaged in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, warranting, marketing, promoting, advertising, distributing, selling, and/or introducing the Product into interstate commerce, either directly or indirectly through third parties or related entities, throughout the United States including, inter alia, San Francisco County, California.  Furthermore, Defendants conducted substantial business, advertised the Product, received substantial compensation and profits from sales of the Product, made material omissions and misrepresentations, and committed breaches of warranties throughout the United States including, inter alia, San Francisco County, California.

36.     Defendant TEVA PHARMACEUTICALS USA, INC. is a Delaware Corporation with its principal place of business located at 1090 Horsham Road, North Wales, Pennsylvania 19454. Defendant TEVA PHARMACEUTICALS USA, INC.. is a wholly-owned subsidiary of Teva Pharmaceuticals Ltd., and Israeli corporation, and is the company's operating business entity for the North American region and throughout the United States of America.

37.     At all times relevant hereto, TEVA PHARMACEUTICALS USA, INC. was engaged in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, warranting, marketing, promoting, advertising, distributing, selling, and/or introducing the Product into interstate commerce, either directly or indirectly through third parties or related entities, throughout the United States including, inter alia, San Francisco County, California.  Furthermore, Defendants conducted substantial business, advertised the Product, received substantial compensation and profits from sales of the Product, made material omissions and misrepresentations, and committed breaches of warranties throughout the United States including, inter alia, San Francisco County, California.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

38.     All said named defendants, collectively referred to herein as "Defendants", are and, at all relevant times alleged herein, were in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, processing, packaging, inspecting, labeling, warranting, marketing, promoting, advertising, distributing, selling, and/or introducing the Product into interstate commerce, either directly or indirectly through third parties or related entities.

39.     Defendants designed, developed, manufactured, tested, marketed, promoted, distributed, and sold Yasmin throughout the United States and, in doing so, Defendants placed the Product in the stream of commerce that led to California as well as other states throughout the United States.

40.     Defendants have received, and will continue to receive, substantial benefits and income through such activities.  Defendants authorized the actions attributed to them herein through their officers, directors, and managing agents.

41.     Plaintiff does not know the true names and capacities of those defendants named and sued herein as Does 1 through 10, and for that reason has sued said defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to reflect their true names when ascertained.  Plaintiff is informed and believes, and based thereon alleges, that each of the defendants sued herein as Does 1 through 10 is responsible in some manner for the occurrences alleged in this action and that these defendants proximately caused the harms suffered by Plaintiff.

42.     At all relevant times alleged herein, Defendants were in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, warranting, marketing, promoting, advertising, distributing, selling, and/or introducing the Product into interstate commerce directly and/or indirectly through third parties or related entities.

43.     At all times relevant hereto, Defendants designed, developed, manufactured, promoted, marketed, distributed, tested, warranted and sold the Product in interstate commerce and in this district in the State of California.  Defendant conducted substantial business, advertised the Product, received substantial compensation and profits from sales of the Product, made material omissions and misrepresentations and committed breaches of warranties in this district and throughout the State of

7

1 | California.

2 | 44.     Venue is proper in this district pursuant to 28 U.S.C.A. § 1391, as a substantial part of

3 | the events, transactions, occurrences or series of transactions or occurrences giving rise to Plaintiff's

4 | claims occurred in this district, in San Francisco County, California.  Plaintiff was injured by said

5 | transactions, occurrences or series of transactions or occurrences.

6 | 45.     This Court has original jurisdiction in this civil action pursuant to 28 U.S.C. § 1332 and

7 | has personal jurisdiction over each defendant, and venue is proper in this district, pursuant to 28 U.S.C.

8 | Section 1391, subsections (a) and (c), because, among other things, Defendants have purposefully

9 | availed themselves of the privilege of conducting business activities in this district in California, where

10 | they sell the product regularly. Venue is also proper in this district because Defendant McKESSON'S

11 | principal place of business is in this district.

12 | <center>FACTUAL ALLEGATIONS</center>

13 | 46.     Upon information and belief, at all times relevant hereto, Defendants, by and through

14 | their employees, agents, affiliates, subsidiaries, and representatives, were involved in developing,

15 | designing, testing, manufacturing, and/or marketing the Product.

16 | 47.     Marketed to prevent pregnancy, the Product is a prescription medication that contains

17 | drospirenone and ethinyl estradiol, (3 mg of drospirenone and 0.03 mg of ethinyl estradiol per tablet).

18 | 48.     Yasmin is a combination birth control pill originally developed by Defendant BERLEX

19 | LABORATORIES, INC. and/or Defendant BERLEX, INC containing the hormones estrogen and

20 | progestin.

21 | 49.     Combination birth control pills are referred to as combined hormonal oral contraceptives

22 | or COC's.

23 | 50.     Yasmin was approved by the FDA in April, 2001.

24 | 51.     In 2006, Bayer acquired Defendant BERLEX LABORATORIES, INC. and/or

25 | Defendant BERLEX, INC, and began marketing an almost identical drug, Yaz (which contains 3 mg of

26 | drospirenone and 0.02 mg of ethinyl estradiol per tablet).

27 | 52.     The difference between Yasmin/Yaz and other birth control pills on the market is that

28 |

<center>8</center>

<center>COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL</center>

1  drospirenone has never before been marketed in the United States and is unlike other progestins
2  available in the United States.

3       53.     Shortly after the introduction of combined oral contraceptives in the 1960s, doctors and
4  researchers found that women using birth control pills had a higher risk of blood clots, heart attacks and
5  strokes than women not using the pill. As a result, the various brands of birth control pills were
6  reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels reduced, so too did
7  the risk of blood clots, heart attacks and strokes.

8       54.     During this time, new progestins were being developed, which became known as
9  "second generation" progestins (e.g. levonorgestrel). These second generation progestins, when
10  combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood
11  clots, heart attacks and strokes and were considered safer for women.

12       55.     During the 1990s, new "third generation" progestins were developed. Unfortunately,
13  these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater
14  risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism
15  or "PE"). As a result of this increased risk of blood clots, the FDA has required that products containing
16  third generation progestins include a warning of the potentially increased risk of thrombosis.

17       56.     Yasmin and Yaz contain the same estrogen component, ethinyl estradiol, that has been
18  used in the lower dose birth control pills for decades.

19       57.     However, drospirenone is a new type of progestin and is considered a "fourth
20  generation" progestin. No birth control pills other than Yasmin, Yaz and Ocella (hereinafter,
21  collectively referred to as "Defendants' products" or the/their "products") contain drospirenone.  Ocella
22  is a recently approved generic version of Yasmin and Yaz marketed under the trade name Ocella.

23       58.     Since drospirenone in birth control is new, there are not decades of data available to
24  support its safe use as there are with second generation progestins. Studies that were done prior to FDA
25  approval, however, indicate that drospirenone has certain side effects and mechanisms of action that are
26  different from those of traditional second generation progestins, and potentially more dangerous.

27       59.     One possible mechanism of action is that drospirenone causes an increase in potassium
28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels
2  become too high. Hyperkalemia can cause, among other things, heart rhythm disturbances, such as
3  extrasystoles, pauses or bradycardia. Hyperkalemia can be fatal.

4       60.    If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart
5  can be slowed to the point that it permits blood clots to form. Blood clots in the heart can then lead to
6  heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary
7  embolism, or can travel to the brain causing stroke.

8       61.    Another effect is a substantially increased risk of gallbladder complications, gallbladder
9  failure and other diseases resulting in cholecystectomy.

10       62.    During the brief time that Defendants' products have been sold in the United States,
11  hundreds of reports of injury and death have been submitted to the FDA in association with
12  Defendants' products.

13       63.    In April 2002, the British Medical Journal reported that the Dutch College of General
14  Practitioners recommended that older second generation birth control pills be prescribed in lieu of
15  Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

16       64.    In February 2003, a paper titled Thromboembolism Associated with the New
17  Contraceptive Yasmin was published in the British Medical Journal, detailing a Netherlands
18  Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was
19  suspected as the cause, including two deaths.

20       65.    Defendants have been warned at least three times by the FDA; in 2003, 2008 and 2009,
21  for misleading the public through the use of ads which overstate the efficacy of their products and
22  minimize serious risks associated with the drug.

23       66.    Defendants ignored the correlation between the use of Defendants' products and
24  increased thrombosis formation despite the wealth of scientific information available. The Bayer
25  Defendants were warned as recently as September 15, 2009, that they had failed to properly test and
26  monitor the quality and safety of pharmaceutical ingredients used to manufacture these products. FDA
27  inspectors cited Bayer Defendants for improperly measuring the quality of drospirenone shipments

28

10

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  from Germany by using a sample averaging method which the FDA does not accept, instead of

2  reporting individual tests results. The FDA said it may delay Bayer Defendants' imports from the

3  German factory until Bayer Defendants provide a full list of all shipments to the U.S. that may have

4  used the averaging method and provide a plan to prevent the problem from recurring.

5    67.    Defendants falsely and fraudulently represented to the medical and healthcare

6  community, to Plaintiff, the FDA, and the public in general, that Defendants' products had been tested

7  and were found to be safe and/or effective for its indicated use.

8    68.    These false representations were made by Defendants with the intent of defrauding and

9  deceiving Plaintiff, the public in general, and the medical and healthcare community in particular, and

10 were made with the intent of inducing the public in general, and the medical and healthcare community

11 in particular, to recommend, dispense and/or purchase the Product for use as a contraceptive, all of

12 which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of

13 Plaintiff.

14   69.    Defendants knew and were aware or should have been aware that their products had not

15 been sufficiently tested, was defective in its design and testing, and/or that it lacked adequate and/or

16 sufficient warnings.

17   70.    Defendants knew or should have known that their products had a potential to, could, and

18 would cause severe and grievous injury and death to the users of said products, and that it was

19 inherently dangerous in a manner that exceeded any purported, inaccurate, and/or downplayed

20 warnings.

21   71.    In representations to Plaintiff, her healthcare providers, and/or the FDA, Defendants also

22 fraudulently concealed and intentionally omitted the following material information:

23        a.   That their products are not as safe as other available contraceptives;

24        b.   That the risks of adverse events with their products (drospirenone and ethinyl

25             estradiol) is higher than those of other available contraceptives;

26        c.   That the risks of adverse events with their products was not adequately tested

27             and/or known by Defendants;

28

11

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

      d.   Plaintiff was put at risk of experiencing serious and dangerous side effects, severe and personal injuries, physical pain, and mental anguish;

      e.   That patients needed to be monitored more regularly than normal while using their products; and

      f.   That their products were designed, tested, manufactured, marketed, produced, distributed and advertised negligently, defectively, fraudulently and improperly.

72.     Defendants were under a duty to disclose to Plaintiff and her physicians, hospitals, healthcare providers and/or the FDA the defective nature of their products.

73.     Defendants had sole access to material facts concerning the defective nature of their products and their propensity to cause serious and dangerous side effects, and hence, cause damage to people who used their products, including Plaintiff.

74.     Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of their products with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, would rely on such in selecting their products as a contraceptive.

75.     Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of their products in their labeling, advertising, product inserts, promotional material or other marketing efforts.

76.     The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representative, employees, distributors, agents and/or detail persons.

77.     Defendants knew that Plaintiff, her healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding their products, as set forth herein.

78.     The misrepresentations of and/or active concealment by Defendants constitute a continuing tort. Indeed, through Defendants' product inserts, Defendants continue to misrepresent the

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  potential risks and serious side effects associated with the use of their products.

2      79.    Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or

3  scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential

4  risks and serious side effects associated with the use of their products in a timely manner, yet they

5  failed to provide such warning.

6      80.    When Plaintiff was first prescribed the Product by her health care provider, Plaintiff

7  justifiably relied on and/or was induced by the misrepresentations and/or active concealment of

8  Defendants to purchase and ingest the Product to her detriment.

9      81.    Plaintiff was using the Product in the manner for which it was intended and/or in a

10  reasonably foreseeable manner and did not discover, nor did she have any reason to discover, that her

11  injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein,

12  until within two years of filing this complaint (hereinafter the "Date of Discovery").  Plaintiff was not

13  aware of and reasonably could not have discovered the dangerous nature of the Product prior to the

14  Date of Discovery.

15      82.    The Product's defects were the result of Defendants' failures including, but not limited

16  to, the following:

17          a.    Defendants' failure to include adequate warnings that would alert the medical,

18                 pharmaceutical and/or scientific communities, and users and/or consumers of the

19                 drug, including Plaintiff, of the potential risks and serious side effects of the

20                 Product;

21          b.    Defendants' failure to adequately and properly test and inspect the drug before

22                 placing the Product on the market;

23          c.    Defendants' failure to conduct sufficient testing and inspection of the drug

24                 which, if properly performed, would have shown that the Product had serious

25                 and life threatening side effects;

26          d.    Defendants' failure to adequately warn the medical, pharmaceutical and/or

27                 scientific communities, and users and/or consumers of the Product, including

28

<center>13</center>

<center>COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL</center>

1   Plaintiff of the potential risks and other serious and life threatening side effects
2   associated with the Product;

3   e.   Defendants' failure to provide adequate post-marketing warnings or instructions
4   after Defendants knew or should have known of the significant risks associated
5   with the use of the Product;

6   f.   Defendants' failure to recall and/or remove the Product from the stream of
7   commerce despite the fact that Defendants knew or should have known of the
8   defective and unreasonably dangerous nature of the drug, including the
9   significant health risks associated with the use of the drug; and

10  g.   Defendants' encouragement of misuse and overuse while failing to disclose the
11  side effects of the drug to the medical, pharmaceutical and/or scientific
12  communities, and users and/or consumers, including Plaintiff, in order to
13  maximize profit from sales.

14  **CAUSES OF ACTION**

15  **FIRST CAUSE OF ACTION AGAINST DEFENDANTS**

16  **(NEGLIGENCE)**

17  83.   Plaintiff incorporates and realleges each and every allegation of this Complaint
18  contained in all of the preceding paragraphs above, with the same force and effect as if fully set forth
19  herein.

20  84.   At all relevant times, the Defendants, and each of them individually, had a duty to
21  exercise reasonable care to consumers, including Plaintiff herein, in all conduct associated with putting
22  their products into the stream of commerce including, but not limited to, the design, development,
23  manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of
24  their products.

25  85.   At all relevant times, the Defendants, and each of them individually, had a duty to
26  comply with all applicable federal laws and standards in all conduct associated with putting their
27  products into the stream of commerce including, but not limited to, the design, development,

28

14

manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of their products.

86.    The Defendants, breached their duty of reasonable care to Plaintiff in that they negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, and/or sold their products.

87.    Plaintiff's injuries and damages alleged herein were and are the direct and proximate result of the Defendants' negligent acts, omissions and violations of Federal laws and standards including, but not limited to, the following:

a.   Failure to exercise reasonable care in their design, development, research, manufacture, testing, packaging, promotion, marketing, sale, distribution of the their products;

b.   Failure to warn or instruct, and/or adequately warn or adequately instruct users of the products, including Plaintiff herein, of said products' known dangerous and defective characteristics;

c.   Failure to exercise reasonable care in the design, development, implementation, administration, supervision and/or monitoring of clinical trials for the products;

d.   Promotion of the products in an overly aggressive, deceitful and fraudulent manner, despite knowledge of the products' defective and dangerous characteristics including its propensity to cause serious injury;

e.   Representing that the products are safe for their intended use when, in fact, the products are unsafe for their intended use;

f.   Use of drospirenone - a dangerous progestin type -- at a dose, level and administration never used before in contraceptives;

g.   Failure to perform appropriate pre-market testing of the products;

h.   Failure to perform appropriate post-market testing of the products; and,

i.   Failure to perform appropriate post-market surveillance of the products.

88.    The Defendants knew or should have known that consumers such as Plaintiff herein

15

1  would suffer injury as a result of the Defendants' failure to exercise reasonable and ordinary care.

2       89.    At all relevant times, the Defendants, and each of them individually, had a duty and
3  obligation refrain from violations of law in the manufacture, design, testing. assembly, inspection,
4  labeling, packaging, supplying, marketing, selling, advertising, preparing for use, warning of the risks
5  and dangers of the products, and otherwise distributing the products.

6       90.    Defendants' acts and omissions constitute an adulteration, misbranding, or both, as
7  defined by the Federal FDCA, 21 U.S.C. §§ 331(a) and 333( a) (2), and constitute a breach of duty
8  subjecting Defendants to civil liability for all damages arising therefrom and from parallel state law
9  requirements, under theories of negligence.

10       91.    Plaintiff, as a purchaser of the Defendants' product, is within the class of persons the
11  statutes and regulations described above are designed to protect and Plaintiff's injuries are the type of
12  harm these statutes are designed to prevent.

13       92.    As a direct and proximate result of Defendants' negligent acts, omissions, carelessness,
14  recklessness and gross negligence, including their failure to comply with applicable federal laws and
15  standards as well as the unreasonably dangerous and defective characteristics of the Product, Plaintiff
16  has suffered severe and permanent physical injuries, pain and suffering/severe emotional distress
17  arising from such physical injuries, economic losses and other damages for which she is entitled to
18  recover, including general, compensatory and special damages as well as equitable and declaratory
19  relief all in an amount and nature to be proven at trial. Defendants are liable jointly and/or severally for
20  all general, special and compensatory damages and equitable relief to which Plaintiff is entitled by law.
21  The Plaintiff seeks actual and punitive damages from the Defendants and alleges that conduct of
22  Defendants was committed with knowing, conscious, reckless, deliberate and grossly negligent
23  disregard for the rights and safety of consumers, including the Plaintiff herein, thereby entitling the
24  Plaintiff to punitive damages in an amount appropriate to punish the Defendants and deter them from
25  similar conduct in the future.

26  ///
27  ///
28

16

1  **SECOND CAUSE OF ACTION AGAINST DEFENDANTS**

2  **(STRICT PRODUCT LIABILITY - MANUFACTURING DEFECT)**

3     93.    Plaintiff incorporates and realleges each and every allegation of this Complaint

4  contained in all paragraphs above, with the same force and effect as if fully set forth herein.

5     94.    At all times material to this action, Defendants were engaged in the business of

6  designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling,

7  and/or selling the products and otherwise putting the products into the stream of commerce.

8     95.    At all times material to this action, the products were expected to reach, and did reach,

9  consumers throughout the United States, including Plaintiff herein, without significant change in the

10  condition in which the products were distributed and/or sold.

11     96.    At all times material to this action, the products were designed, developed,

12  manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in

13  a defective and unreasonably dangerous condition in one or more of the following particulars:

14          a.  When placed in the stream of commerce, the products contained manufacturing

15             defects which rendered the product unreasonably dangerous;

16          b.  When placed in the stream of commerce, the products contained manufacturing

17             defects which resulted in lot to lot variability which rendered the products

18             unreasonably dangerous;

19          c.  The products' manufacturing defects were created while the products were in the

20             possession and control of the Defendants;

21          d.  The products were not manufactured in accordance with the Defendants'

22             specifications or performance standards and/or the products deviated from the

23             approved plans and specifications therefor;

24          e.  The manufactured products' composition post-marketing was materially different

25             from the pre-marketing products; and,

26          f.  The manufactured products deviated from the product design and manufacturing

27             defects existed in the products before they left the Defendants' control.

28

17

97.     As a direct and proximate result of Defendants' negligent acts, omissions, carelessness, recklessness and gross negligence, including their failure to comply with applicable federal laws and standards, as well as the unreasonably dangerous and defective characteristics of Defendants' products, Plaintiff has suffered severe and permanent physical injuries, pain and suffering/severe emotional distress arising from such physical injuries, economic losses and other damages for which she is entitled to recover, including general, compensatory and special damages as well as equitable and declaratory relief all in an amount and nature to be proven at trial. Defendants are liable jointly and/or severally for all general, special and compensatory damages and equitable relief to which Plaintiff is entitled by law.

### THIRD CAUSE OF ACTION AGAINST DEFENDANTS
### (STRICT PRODUCT LIABILITY - FAILURE TO WARN)

98.     Plaintiff incorporates and realleges each and every allegation of this Complaint contained in all paragraphs above, with the same force and effect as if fully set forth herein.

99.     Defendants' products were defective and unreasonably dangerous when they left the possession of the Defendants in that they contained warnings insufficient to alert consumers, including Plaintiff herein, of the dangerous risks and reactions associated with use of the products including, but not limited to, the products' propensity to cause blood clots (thromboembolism), pulmonary emboli (blood clots in lungs), strokes, heart attacks, deep vein thrombosis (DVT), venous thromboembolism (VTE) and other serious injuries and side effects, despite the fact that Defendants knew that the products posed a greater risk of these injuries and side effects than other forms of contraception.

100.     Plaintiff was prescribed and used the Product for its intended purpose as birth control and Plaintiff could not have discovered any defect in the product through the exercise of reasonable care.

101.     The Defendants, as manufacturers and/or distributors of the prescription Product, are held to the level of knowledge of an expert in the field and Plaintiff and her physicians reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

102.     The warnings that were given by the Defendants were not accurate, clear and/or were

18

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1 | ambiguous and failed to properly warn physicians and/or consumers that the products increased risks of

2 | blood clots, pulmonary emboli, strokes, heart attacks, deep vein thrombosis, and other serious injuries

3 | and side effects.

4 |       103.   The Defendants knew that their warnings failed to properly warn physicians and/or

5 | consumers that the product increased risks of blood clots (thromboembolism), pulmonary emboli,

6 | strokes, heart attacks, deep vein thrombosis, and other serious injuries and side effects and Defendants

7 | intended and expected Plaintiff, individually and through her prescribing physician, to rely upon the

8 | information contained in the Product's package insert.

9 |       104.   The Defendants had a continuing duty to warn Plaintiff of the dangers associated with

10 | the Product.

11 |       105.   Safer alternative products were available that provided substantially equal effectiveness

12 | without the risks posed by the Product.

13 |       106.   Had Plaintiff received adequate warnings regarding the risks of the Product, she would

14 | not have used the product.

15 |       107.   Had Plaintiff's physicians received adequate warnings regarding the risks of the Product,

16 | they would not have prescribed the Product.

17 |       108.   Had Plaintiff's physicians received adequate warnings regarding the risks of the Product,

18 | they would have prescribed a different contraceptive or advised the use of an alternative method of

19 | contraception.

20 |       109.   As a direct and proximate result of Defendants' negligent acts, omissions, carelessness,

21 | recklessness and gross negligence, including their failure to comply with applicable federal laws and

22 | standards, as well as the unreasonably dangerous and defective characteristics of the Product, Plaintiff

23 | has suffered severe and permanent physical injuries, pain and suffering/severe emotional distress

24 | arising from such physical injuries, economic losses and other damages for which she is entitled to

25 | recover, including general, compensatory and special damages as well as equitable and declaratory

26 | relief all in an amount and nature to be proven at trial. Defendants are liable jointly and/or severally for

27 | all general, special and compensatory damages and equitable relief to which Plaintiff is entitled by law.

28 |

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## FOURTH CAUSE OF ACTION AGAINST DEFENDANTS

### (BREACH OF EXPRESS WARRANTY)

110.     Plaintiff incorporates and realleges each and every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if fully set forth herein.

111.     Defendants expressly warranted the following:  That the Product was safe and fit for use by consumers and users, including Plaintiff; That the Product was fit for its intended purpose; That the Product was of merchantable quality; That the Product did not pose any unreasonable risks or dangers; and that the Product was adequately tested and found fit for its intended use.

112.     At the time that Defendants made the express warranties, Defendants knew or should have known of the purpose for which the Product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.

113.     At the time that Defendants made the express warranties, Defendants knew or should have known of the purpose for which the Product was to be used and Defendants warranted the same to be, in all respects, as fit, safe, and effective and proper for such purpose, as birth control pills.

114.     At the time that Defendants made the express warranties, Defendants knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that the Product was not safe and not fit for its intended use and, in fact, posed serious risks of injuries to the user.

115.     Members of the medical community including, but not limited to, Plaintiff' physicians, reasonably relied upon the skill and judgment of Defendants, and upon said express warranties, in prescribing, recommending and/or dispensing Defendants' products to users.

116.     Defendants intended and expected members of the medical community to rely upon Defendants' express warranties.

117.     Defendants intended and expected Plaintiff to rely upon Defendants' express warranties.

118.     Plaintiff herein reasonably relied on the Defendants' express warranties.

119.     Defendants materially breached said express warranties in that the Product is not and, at all relevant times, was not safe and fit for its intended use and, in fact, caused debilitating and

20

1  potentially lethal side effects with greater frequency than safer alternative methods of birth control.

2      120.    As a direct and proximate result of Defendants' wrongful conduct, material breach of

3  express warranties, and failure to comply with applicable federal laws and standards, as well as the

4  unreasonably dangerous and defective characteristics of the product, Plaintiff has suffered severe and

5  permanent physical injuries, pain and suffering/severe emotional distress arising from such physical

6  injuries, economic losses and other damages for which she is entitled to recover, including general,

7  compensatory and special damages as well as equitable and declaratory relief all in an amount and

8  nature to be proven at trial. Defendants are liable jointly and/or severally for all general, special and

9  compensatory damages and equitable relief to which Plaintiff is entitled by law. The Plaintiff seeks

10  actual and punitive damages from the Defendants as alleged herein.

11                    **FIFTH CAUSE OF ACTION AGAINST DEFENDANTS**

12                         **(BREACH OF IMPLIED WARRANTIES)**

13      121.    Plaintiff incorporates and realleges each and every allegation of this Complaint

14  contained in the paragraphs above, with the same force and effect as if more fully set forth herein.

15      122.    The Defendants designed, manufactured, marketed, distributed, supplied and sold their

16  products for the prevention of pregnancy.

17      123.    At the time that the Defendants manufactured, marketed, distributed, supplied, and/or

18  sold their products, they knew of the use for which the products were intended and impliedly warranted

19  that the products were of merchantable quality and safe and fit for such use.

20      124.    Plaintiff, individually and through her prescribing physicians, reasonably relied upon the

21  skill, superior knowledge and judgment of the Defendants.

22      125.    Plaintiff was prescribed, purchased, and used the Product for its intended purpose.

23      126.    Due to the Defendants' wrongful conduct as alleged herein, Plaintiff could not have

24  known about the true nature of the risks and side effects associated with the Product until after Plaintiff

25  used the Product.

26      127.    Contrary to and in material breach of Defendants' implied warranties regarding the

27  Product, the Product was not of merchantable quality, and was not safe or fit for its intended uses and

28

1   purposes including, but not limited to, as birth control/as a hormonal contraceptive.

2       128.    As a direct and proximate result of Defendants' wrongful conduct, material breach of

3   implied warranties, and failure to comply with applicable federal laws and standards, as well as the

4   unreasonably dangerous and defective characteristics of the Product, Plaintiff has suffered severe and

5   permanent physical injuries, pain and suffering/severe emotional distress arising from such physical

6   injuries, economic losses and other damages for which she is entitled to recover, including general,

7   compensatory and special damages as well as equitable and declaratory relief all in an amount and

8   nature to be proven at trial. Defendants are liable jointly and/or severally for all general, special and

9   compensatory damages and equitable relief to which Plaintiff is entitled by law. The Plaintiff seeks

10  actual and punitive damages from the Defendants as alleged herein.

11                    SIXTH CAUSE OF ACTION AGAINST DEFENDANTS

12                        (INTENTIONAL MISREPRESENTATION/DECEIT)

13      129.    Plaintiff incorporates and realleges each and every allegation of this Complaint

14  contained in the paragraphs above, with the same force and effect as if more fully set forth herein.

15      130.    Defendants conducted scientific research and used their products as part of their

16  research.

17      131.    Defendants utilized direct to consumer advertising to market, promote, and/or advertise

18  their products.

19      132.    In disseminating information to the public, Defendants had a duty to disseminate truthful

20  information and a parallel duty not to deceive the public, the Plaintiff, her healthcare providers and the

21  FDA.

22      133.    In breach of their duties not to deceive, the Defendants made material misrepresentation

23  of fact, concealed material information and otherwise falsely and fraudulently represented to the

24  medical and healthcare community, to the Plaintiff, and to the public, that their products had been

25  tested and were found to be safe and effective for use by women in general and Plaintiff in particular.

26      134.    In breach of their duties not to deceive, Defendants fraudulently concealed material

27  information and misrepresented the risks of venous thrombotic events associated with the use of the

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  Product and fraudulently concealed and misrepresented in advertising that a low incidence of side
2  effects was associated with the use of their products.

3      135.    In breach of their duties not to deceive, Defendants fraudulently concealed the increased
4  risks of clots (thromboembolism) and other adverse events caused by their products -- despite the fact
5  that Defendants knew that scientific studies demonstrated a substantially greater risk.

6      136.    In breach of their duties not to deceive, Defendants fraudulently concealed and
7  misrepresented material information in their own studies that, inter alia, their products significantly
8  increased risks posed by factors predisposing users to clotting including, but not limited to, factor V
9  Leiden deficiency, protein C, protein S, and anti-thrombin III, and that YASMIN caused an activation
10  of platelet cascading.

11      137.    In breach of their duties not to deceive, defendants fraudulently concealed and
12  misrepresented adverse results of clinical investigations of their products.

13      138.    The Defendants made material misrepresentations to consumers, to Plaintiff and to her
14  healthcare providers, fraudulently concealed material facts and intentionally omitted material
15  information. Such material misrepresentations, fraudulent concealments of material facts, fraudulent
16  acts and omissions include, but are not limited to, the following:

17          a.   Defendants falsely represented that the side effect risks of the use of their products
18               was the same as and not greater than risks posed by other oral contraceptives/birth
19               control pills;

20          b.   Defendants falsely stated that it was unknown whether the risk of venous
21               thromboembolism with their products was different from the risks posed by other
22               oral contraceptives;

23          c.   Defendants falsely advertised that their products have a low incidence of side
24               effects;

25          d.   Defendants stated that ingredients used in their products were superior to other oral
26               contraceptives; however, Defendants knew that scientific studies demonstrated their
27               products posed significantly greater risks of thromboembolism;

28

23

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

e. Defendants stated that differing risks of clots (thromboembolism) with their products as compared to other birth control pills were unknown, whereas Defendants knew that scientific studies demonstrated significantly greater risks of clots (thromboembolism);

f. Defendants failed to inform prescribers and users that their own studies demonstrated that their products significantly increased risks posed by factors predisposing users to clotting including, but not limited to, factor V Leiden deficiency, protein C, protein S, and anti-thrombin III, and that YASMIN caused an activation of platelet cascading;

g. Defendants concealed from prescribers and users that their products can cause hyperkalemia, gallbladder failure and other serious health consequences leading to permanent bodily impairment; and

h. Defendants failed to inform prescribers and users that FDA approval of their products was limited to use as a contraceptive only.

139. Defendants knew those representations to be false when made and Defendants made such representations in willful, wanton and reckless disregard of the truth.

140. As a result of Defendants' research and testing, Defendants knew that the information they intentionally distributed was false including, but not limited to, assuring the public, the Plaintiff, her doctors, hospitals, healthcare professionals, and the FDA that their products were safe for use as a means of birth control.

141. As a result of Defendants' research and testing, Defendants knew they were intentionally omitting material information and certain results of testing and research to the public, the Plaintiff, healthcare professionals, and the FDA.

142. Defendants conspired to omit data from testing and research of their products and to create ways to hide the true dangers of the products in reporting to the public, healthcare professionals, Plaintiff and/or the FDA.

143. Defendants distributed and published reports, press releases, advertising campaigns,

1   television commercials, print ads, magazine ads, billboards, and other commercial media to the public,

2   the FDA and the Plaintiff that contained material misrepresentations of fact and/or omissions of

3   material fact concerning their products.

4       144.   The information distributed to the public, the FDA and the Plaintiff by Defendants

5   intentionally included representations that Defendants' products were safe for use as a form of birth

6   control.

7       145.   The information distributed to the public, the FDA and the Plaintiff by Defendants

8   intentionally included representations that Defendants' products carried the same risks, hazards, and/or

9   dangers as other birth control pills/oral contraceptives.

10       146.   The information that Defendants distributed to the public, the FDA and the Plaintiff,

11   intentionally included false representations that the products were not injurious to the health and/or

12   safety of their intended users and that the products' risks to their users' health and/or safety were the

13   same as the risks posed by other oral contraceptives/birth control pills.

14       147.   Defendants intentionally suppressed, ignored and disregarded unfavorable test results

15   that demonstrated that their products were not safe as a means of contraception and/or were not as safe

16   as other available means of contraception including, but not limited to, other oral contraceptive birth

17   control pills.

18       148.   At the time the aforesaid representations were made by the Defendants and at the time

19   the Plaintiff used the Product, the Plaintiff was unaware of the falsity of said representations,

20   reasonably believed said representations to be true and reasonably relied upon said representations and

21   was induced to and did use the Product, thereby sustaining severe and permanent personal injuries.

22       149.   The Defendants knew and/or should have known that their products had not been

23   sufficiently tested, was unsafe, defective in design and manufacture, unreasonably dangerous and/or

24   that they lacked adequate and/or sufficient warnings.

25       150.   The Defendants knew and/or should have known that their products posed substantially

26   greater risks of clotting (thromboembolism), substantially greater risk of hyperkalemia and

27   substantially greater risk of other adverse events than those posed by other birth control pills and other

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  available contraceptives, thus demonstrating at the very least that further testing was needed.

2      151.   The Defendants knew and/or should have known that their products could and would

3  cause severe and grievous injury to users and that their products are inherently dangerous in a manner

4  that exceeded all product warnings issued by Defendants.

5      152.   The Defendants brought their products to the market, and acted fraudulently, wantonly

6  and maliciously to the detriment of the Plaintiff.

7      153.   At all relevant times during the course of dealing between the Defendants, Plaintiff and

8  her healthcare providers, the Defendants brought their products to the market, and acted fraudulently,

9  wantonly and maliciously to the detriment of the Plaintiff by, inter alia, misrepresenting the safety of

10  their products and concealing material information concerning risks posed by their products.

11      154.   The Defendants had sole access to material facts concerning the defective nature of their

12  products and their propensity to cause serious and dangerous side effects and to cause injury and

13  damage to persons who used such products, including the Plaintiff herein.

14      155.   The Defendants fraudulently concealed material information and misrepresented

15  material facts by comparing their products' risks to other oral contraceptives while Defendants had

16  prior knowledge that their products would expose women to a dangerous progestin as compared to

17  other oral contraceptives and thus pose a substantially increased thrombotic risk to their products'

18  users, including Plaintiff.

19      156.   The Defendants fraudulently concealed material information and misrepresented

20  material facts by comparing their products' risks to other oral contraceptives despite the fact that

21  Defendants had prior knowledge that their products would expose women to a dangerous progestin and

22  thus pose a materially increased risk of thrombosis and other adverse events to their products' users,

23  including Plaintiff.

24      157.   Through the material misrepresentations and intentional concealments of material facts

25  as alleged herein, Defendants intended to deceive and defraud the public, the FDA, and the Plaintiff;

26  intended to gain the confidence of the public, healthcare professionals, the FDA, and the Plaintiff;

27  intended to falsely inspire confidence in the quality and fitness for use of their products; and intended to

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    induce the public and the Plaintiff to use, purchase, request, dispense, prescribe, recommend, and/or

2    continue to use their products.

3          158.    Defendants made the aforementioned false claims and false representations intending to

4    convince the public, healthcare professionals, the FDA and the Plaintiff that their products are fit and

5    safe for use as birth control and that their products do not pose risks, dangers, or hazards above and

6    beyond those identified and/or associated with other oral contraceptives/birth control pills.

7          159.    Defendants made claims and representations in their documents submitted to the FDA,

8    to the public, to healthcare professionals and the Plaintiff that, inter alia, their products did not pose any

9    serious health and/or safety risks; that the risks posed by their products were the same as other oral

10    contraceptives/birth control pills.

11         160.    The representations alleged herein and others were false when made by Defendants

12    and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or

13    were made recklessly and without regard to the truth and/or actual facts.

14         161.    The representations alleged herein and others were made by Defendants with the

15    intention of deceiving and defrauding the Plaintiff, her healthcare professionals and/or the FDA, and

16    were made by Defendants in order to induce the Plaintiff, her healthcare professionals and/or the FDA

17    to rely upon the misrepresentations and cause the Plaintiff, her healthcare professionals and the public

18    to purchase, use, rely on, request, dispense, recommend, and/or prescribe the Product.

19         162.    Defendants, recklessly, intentionally and falsely represented the health and/or safety

20    risks of their products to the public and to Plaintiff, for the purpose of influencing the sales and

21    marketing of products that Defendants knew to be dangerous and defective and/or not as safe as other

22    available alternatives, including other oral contraceptives/birth control pills.

23         163.    Defendants willfully and intentionally concealed and failed to disclose the material facts

24    regarding the dangerous and serious safety risks of their products.

25         164.    Defendants willfully and intentionally concealed and failed to disclose material facts and

26    made false representations with the purpose, intent and design of deceiving and lulling the Plaintiff and

27    her healthcare professionals into a false sense of security so that Plaintiff would rely on the

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  representations, purchase and use the Product and so that healthcare providers would dispense,

2  prescribe, and/or recommend the Product.

3  165.    Defendants knew or should have known that the public, including the Plaintiff and her

4  healthcare professionals, would rely upon the information that Defendants disseminated through their

5  public relations campaigns which included, but were not limited to, public statements and press

6  releases.

7  166.    Plaintiff and her healthcare professionals believed that the Defendants' representations

8  were true at the time they were made, reasonably relied upon such representations and reasonably relied

9  on the Defendants' superior knowledge of their products, reasonably relied on the Defendants' selective

10  recitation of facts and absence of adverse facts that were negligently, fraudulently and/or purposefully

11  concealed and/or omitted by the Defendants.  Plaintiff and her healthcare professionals were thereby

12  induced to purchase, use, dispense, prescribe, and/or recommend the Product.

13  167.    At the time the representations were made, the Plaintiff and/or her healthcare providers

14  did not know the truth with regard to the dangerous and serious health and/or safety risks of the

15  Product.

16  168.    Plaintiff did not discover the true facts with respect to the dangerous and serious health

17  and/or safety risks, and the false representations of Defendants, nor could the Plaintiff with reasonable

18  diligence have discovered the true facts until the Date of Discovery.  The Plaintiff has still not

19  discovered all of the true facts, all of the dangerous and serious health/safety risks, all of the false

20  representations made nor has Plaintiff discovered all of the Defendants' wrongful conduct concerning

21  the product, as such discovery is still ongoing and discovery of the Defendants' acts, omissions and

22  other wrongful conduct concerning the product is continuing in this matter.

23  169.    Had the Plaintiff known the true facts with respect to the dangerous and serious health

24  and/or safety risks posed by the Product, Plaintiff would not have purchased, used and/or relied on the

25  Product.

26  170.    The Defendants' concealment of material facts and misrepresentations as alleged herein

27  concerning, inter alia, the safety of their products, were made purposefully, willfully, wantonly, and/or

28

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  recklessly, in order to mislead Plaintiff herein and her physicians, hospitals and healthcare providers
2  into reliance, continued use of the product, and actions thereon, and to cause Plaintiff to purchase,
3  dispense and/or use the Product while Defendants knew that said persons and entities were unable to
4  determine the truth behind the Defendants' concealment and omissions, as set forth herein.  Said acts
5  and omissions as alleged herein evinces a callous, reckless, willful, depraved indifference to the health,
6  safety and welfare of the Plaintiff and the public

7  171.  As a direct and proximate result of Defendants' acts, omissions, wrongful conduct and
8  failure to comply with applicable federal laws and standards, as well as the unreasonably dangerous and
9  defective characteristics of the Product, Plaintiff has suffered severe and permanent physical injuries,
10  pain and suffering/severe emotional distress arising from such physical injuries, economic losses and
11  other damages for which she is entitled to recover including general, compensatory and special
12  damages as well as equitable and declaratory relief all in an amount and nature to be proven at trial.
13  Defendants are liable jointly and/or severally for all general, special and compensatory damages and
14  equitable relief to which Plaintiff is entitled by law. The Plaintiff seeks actual and punitive damages
15  from the Defendants and alleges that the conduct of Defendants was committed with knowing,
16  conscious, reckless, deliberate and grossly negligent disregard for the rights and safety of consumers,
17  including the Plaintiff herein, thereby entitling the Plaintiff to punitive damages in an amount
18  appropriate to punish the Defendants and deter them from similar conduct in the future.

19  <div align="center">**SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS**</div>
20  <div align="center">**(NEGLIGENT MISREPRESENTATION/CONCEALMENT)**</div>

21  172.  Plaintiff incorporates and realleges each and every allegation of this Complaint
22  contained in the paragraphs above, with the same force and effect as if fully set forth herein.

23  173.  At all relevant times alleged herein, the Defendants had a duty to, inter alia, truthfully,
24  fully and accurately inform the healthcare community, the Plaintiff, and the public of all facts
25  concerning their products' testing, safety, risks and efficacy for its intended purpose.

26  174.  At all relevant times alleged herein, the Defendants failed to exercise ordinary care in
27  their representations concerning their products and engaged in the manufacture, sale, testing, quality

28

<div align="center">29</div>
<div align="center">COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL</div>

1   assurance, quality control, and/or distribution of their products into interstate commerce while

2   negligently misrepresenting that the products had been fully tested and found to be safe, that the

3   products were safe and free of material risks to their users, thereby breaching their duties to truthfully

4   and accurately represent the products' side effects and risks to the medical and healthcare community,

5   to the Plaintiff, and to the general public.

6       175.   In material breach of their duties to, inter alia, truthfully, fully and accurately inform the

7   healthcare community, the Plaintiff, and the public of all facts concerning the products' testing, safety,

8   risks and efficacy, Defendants' promotional and marketing campaigns contained material

9   misrepresentations concerning the safety, risks, soundness and reliability of their products.  Said

10  promotional and marketing campaigns concealed the true material information known by defendants

11  concerning the risks posed by their products.  Defendants have continued this promotional and

12  marketing campaign to date regarding their products.

13      176.   Defendants misrepresented and concealed material deviations in the manufactured

14  product from the approved designs therefor and the resulting high risk of injuries and adverse events

15  posed by said manufacturing defects in the products.

16      177.   Defendants knew or should have known that their representations concerning the

17  products' safety were false and that a high risk of injury was posed to the Plaintiff by her unwitting use

18  of the defective Product.

19      178.   At the time Plaintiff purchased the Product, Defendants were in a unique position of

20  knowledge concerning the risks posed by their products, which knowledge was not possessed by

21  Plaintiff, and Defendants thereby held a position of superiority over Plaintiff. Defendants took

22  advantage of the limited opportunity Plaintiff had to discover Defendants' strategic and intentional

23  concealment of the defects in the Product. Defendants took unconscionable advantage of their dominant

24  position of knowledge with regard to Plaintiff.

25      179.   Through their unique knowledge and expertise regarding the defective nature of the their

26  products, and through their marketing of these products, including statements to physicians and their

27  patients in advertisements, promotional materials, and other communications, Defendants convinced

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  Plaintiff and her physicians that Defendants possessed facts demonstrating that their products are and,

2  at all relevant times, were safe, effective for their intended use and free of defects.

3       180.   Defendants' representations to Plaintiff and her physicians were unqualified statements

4  made to induce Plaintiff to purchase the Product and made to induce physicians to prescribe the

5  Product. Plaintiff reasonably relied upon the statements when purchasing and using the Product and

6  Plaintiff's physicians reasonably relied upon the statements when prescribing the Product. Defendants

7  took unconscionable advantage of their dominant position of knowledge with regard to Plaintiff and her

8  physicians and engaged in constructive fraud in their relationship with Plaintiff.

9       181.   Defendants' concealments, misrepresentations and omissions were undertaken in order

10  to induce Plaintiff and the general public to purchase Defendants' product and choose said Product over

11  other safer birth control medications and methods on the market and, at all relevant times, Plaintiff

12  reasonably relied on Defendants' acts and omissions in using the Product.

13       182.   As a direct and proximate result of Defendants' acts, omissions, wrongful conduct and

14  failure to comply with applicable federal laws and standards, as well as the unreasonably dangerous and

15  defective characteristics of the Product, Plaintiff has suffered severe and permanent physical injuries,

16  pain and suffering/severe emotional distress arising from such physical injuries, economic losses and

17  other damages for which she is entitled to recover, including general, compensatory and special

18  damages as well as equitable and declaratory relief all in an amount and nature to be proven at trial.

19  Defendants are liable jointly and/or severally for all general, special and compensatory damages and

20  equitable relief to which Plaintiff is entitled by law. The Plaintiff seeks actual and punitive damages

21  from the Defendants and alleges that conduct of Defendants was committed with knowing, conscious,

22  reckless, deliberate and grossly negligent disregard for the rights and safety of consumers, including the

23  Plaintiff herein, thereby entitling the Plaintiff to punitive damages in an amount appropriate to punish

24  the Defendants and deter them from similar conduct in the future.

25                     **EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS**

26                                     **(FRAUD)**

27       183.   Plaintiff realleges and incorporates herein by reference the foregoing paragraphs of this

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   Complaint as though set forth in full herein.

2        184.   Defendants, and each of them, falsely and fraudulently represented to plaintiff, her

3   physicians, and members of the general public, that the COC PRODUCT was safe for use in treatment

4   to prevent pregnancy. The representations by Defendants, and each of them, were in fact, false. The

5   true facts were that the COC PRODUCT was not safe for use by Plaintiff and members of the general

6   public and was, in fact, dangerous to the health and body of Plaintiff.

7        185.   Defendants, and each of them, falsely and fraudulently represented to Plaintiff, her

8   physicians, and members of the general public, that the COC PRODUCT was safe for use in treatment

9   of acne. The representations by Defendants, and each of them, were in fact, false. The true facts were

10  that the COC PRODUCT was not safe for use by Plaintiff and members of the general public and was,

11  in fact, dangerous to the health and body of Plaintiff.

12       186.   Defendants, and each of them, falsely and fraudulently represented to Plaintiff, her

13  physicians, and members of the general public, that the COC PRODUCT was safe for use in treatment

14  of mood disorders. The representations by Defendants, and each of them, were in fact, false. The true

15  facts were that the COC PRODUCT was not safe for use by Plaintiff and members of the general public

16  and was, in fact, dangerous to the health and body of Plaintiff.

17       187.   Defendants, and each of them, falsely and fraudulently represented to Plaintiff, her

18  physicians, and members of the general public, that the COC PRODUCT was safe for use in treatment

19  of signs and symptoms of premenstral syndrome. The representations by Defendants, and each of them,

20  were in fact, false. The true facts were that the COC PRODUCT was not safe for use by Plaintiff and

21  members of the general public and was, in fact, dangerous to the health and body of Plaintiff.

22       188.   Defendants, and each of them, falsely and fraudulently represented to Plaintiff, her

23  physicians, and members of the general public, that the COC PRODUCT was safe for use in treatment

24  of signs and symptoms of hormone imbalance. The representations by Defendants, and each of them,

25  were in fact, false. The true facts were that the COC PRODUCT was not safe for use by Plaintiff and

26  members of the general public and was, in fact, dangerous to the health and body of Plaintiff.

27       189.   Defendants, and each of them, made other representations that the safety of COC

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   PRODUCT was equal to oral contraceptive pills containing first and second generation progestins and

2   posed less safety risks that other oral contraceptive options available to Plaintiff.

3        190.    Defendants, and each of them, made other representations about the safety of COC

4   PRODUCT its minimal side effects, all as explained above and incorporated here by reference.

5        191.    The representations by Defendants, and each of them, were, in fact, false. The true facts

6   were that the COC PRODUCT caused severe hyperkalemia, increased risks and incidence of organ

7   failure, stroke, heart attack, deep vein thromboses, pulmonary embolism, liver tumors, liver failure,

8   kidney failure, kidney tumors and other diseases, disorders and failures of body systems, among other

9   side effects, and defendants, and each of them, did not disclose or warn users and their physicians about

10  such known risks and side effects of the COC PRODUCT.  Defendants, and each of them,

11  misrepresented the safety of the COC PRODUCT, represented that the product marketed was safe for

12  long term use, and concealed warnings of the known or knowable risks and side effects of the COC

13  PRODUCT.

14       192.    When the Defendants, and each of them, made these representations, they knew that

15  such representations were false. Defendants, and each of them, made the representations with the intent

16  to defraud and deceive Plaintiff, and with the intent to induce Plaintiff to act in the manner alleged in

17  this complaint, that is, to use the COC PRODUCT.

18       193.    At the time Defendants, and each of them, made the above-described representations,

19  and at the time Plaintiff took the actions alleged in this complaint, Plaintiff and her physicians were

20  ignorant of the falsity of the representations and reasonably believed them to be true. In reliance upon

21  the representations, Plaintiff was induced to, and did, use the COC PRODUCT as described in this

22  complaint. If Plaintiff had known the actual facts, she would not have taken such action. The reliance

23  of plaintiff and her physicians upon Defendants' representations was justified because the

24  representations were made by individuals and entities that appeared to be in a position to know the true

25  facts.

26       194.    As a direct and proximate result of Defendants' fraud and deceit, Plaintiff sustained the

27  injuries and damages described in this complaint.

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    195.    In doing the acts alleged in this complaint, the Defendants, and each of them, acted with

2    oppression, fraud, and malice, and Plaintiff is therefore entitled to punitive damages to deter the

3    Defendants, and each of them, and others from engaging in similar conduct in the future. The wrongful

4    conduct was undertaken with the advance knowledge, authorization, or ratification of an officer,

5    director, or managing agent of Defendants, and each of them.

6                                    **NINTH CAUSE OF ACTION**

7                      **(VIOLATION OF *BUSINESS & PROFESSIONS CODE* § 17200)**

8    196.    Plaintiff realleges and incorporates herein by reference the foregoing paragraphs of this

9    Complaint as though set forth in full herein.

10   197.    Plaintiff brings this cause of action pursuant to California *Business & Professions Code*

11   § 17204, in her individual capacity, and not on behalf of the general public.

12   198.    California *Business & Professions Code* § 17200 provides that unfair competition shall

13   mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or

14   misleading advertising".

15   199.    The acts and practices alleged herein were and are likely to mislead the general public

16   and therefore constitute unfair business practices within the meaning of California *Business &*

17   *Professions Code* § 17200. The acts of untrue and misleading advertising set forth in preceding

18   paragraphs, incorporated herein by reference, are by definition, violations of California *Business &*

19   *Professions Code* § 17200. This conduct includes, but is not limited to:

20             a.   Representing to Plaintiff, Plaintiff's physicians, and the general public that their

21                  products are and, at all relevant times, were safe, fit, and effective for human

22                  consumption, knowing that said representations were false, and concealing from the

23                  Plaintiff, Plaintiff's physicians, and the general public that their products had a

24                  serious propensity to cause injuries to users;

25             b.   Engaging in advertising campaigns designed to create the image, impression and

26                  belief by consumers and physicians that their products were safe for human

27                  consumption, had fewer side effects and adverse reactions than other methods of

28

                                                    34
                   COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

birth control, constituted a convenient, safe form of contraception and would not pose risks greater than other COCs, even though the Defendants knew these to be false and, further, had no reasonable grounds to believe them to be true;

   c. Purposely downplaying and understating the health hazards and risks associated with the their products; and

   d. Publishing promotional literature and commercials deceiving potential users of their products by relaying only positive information, including testimonials from alleged users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety of their products.

200.   These practices constitute unlawful, unfair and fraudulent business acts or practices, within the meaning of California *Business & Professions Code* § 17200, as well as unfair, deceptive, untrue and misleading advertising as prohibited by California *Business & Professions Code* § 17500.

201.   The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described therein.

202.   As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale and prescription of their products in California, sold in large part as a result of the acts and omissions described herein.

203.   Because of fraudulent misrepresentations made by Defendants as detailed above, and the inherently unfair practice of committing a fraud against the public by intentionally misrepresenting and concealing material information, the acts of Defendants described herein constitute unfair and/or fraudulent business practices.

204.   Plaintiff, pursuant to California *Business & Professions Code* § 17203, seeks an order of this court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

## TENTH CAUSE OF ACTION

### (VIOLATION OF *BUSINESS & PROFESSIONS* CODE §17500)

205.   Plaintiff realleges and incorporates herein by reference the foregoing paragraphs of this Complaint as though set forth in full herein.

206.   Plaintiff brings this cause of action pursuant to California *Business & Professions Code* § 17500, in her individual capacity and not on behalf of the general public.

207.   California *Business & Professions Code* § 17500 provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

208.   At all times herein alleged Defendants have committed acts of disseminating untrue and misleading statements as defined by California *Business & Professions Code* § 17500 by engaging in the following acts and practices with intent to induce members of the public to purchase and use their products:

      a.   Representing to Plaintiff, Plaintiff's physicians, and the general public that their products are and, at all relevant times, were safe, fit, and effective for human consumption, knowing that said representations were false, and concealing from the Plaintiff, Plaintiff's physicians, and the general public that their products had a serious propensity to cause injuries to users;

      b.   Engaging in advertising campaigns designed to create the image, impression and belief by consumers and physicians that the use of their products was safe for human consumption, had fewer side effects and adverse reactions than other methods of birth control, constituted a convenient, safe form of contraception and would not pose risks greater than other COCs, even though the Defendants knew these to be false and, further, had no reasonable grounds to believe them to be true;

      c.   Purposely downplaying and understating the health hazards and risks associated with their products; and

      d.   Issuing promotional literature and commercials deceiving potential users of their

36

1        products by relaying only positive information, including testimonials from users,

2        and manipulating statistics to suggest widespread acceptability, while downplaying

3        the known adverse and serious health effects and concealing material relevant

4        information regarding the safety of their products.

5    209.    The foregoing practices constitute false and misleading advertising within the meaning

6  of California *Business & Professions Code* § 17500.

7    210.    The acts of untrue and misleading statements by Defendants described herein above

8  present a continuing threat to members of the public in that the acts alleged herein are continuous and

9  ongoing, and the public will continue to suffer the harm alleged herein.

10   211.    As a result of their conduct described above, Defendants have been and will be unjustly

11  enriched.  Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of

12  dollars in ill-gotten gains from the sale and prescription of their products in California, sold in large

13  part as a result of the acts and omissions described herein.

14   212.    Pursuant to California *Business & Professions Code* § 17535, Plaintiff seeks an order of

15  this court compelling the Defendants to provide restitution and injunctive relief calling for Defendants,

16  and each of them, to cease unfair business practices in the future.

17   213.    Plaintiff seeks restitution of the monies collected by Defendants, and each of them, and

18  other injunctive relief to cease such false and misleading advertising in the future.

19                    ELEVENTH CAUSE OF ACTION

20           (VIOLATION OF CALIFORNIA *CIVIL CODE* §§ 1750, ET. SEQ.)

21   214.    Plaintiff realleges and incorporate herein by reference the foregoing paragraphs of this

22  Complaint and further states as follows:

23   215.    Plaintiff is informed and believe and thereon allege that Defendants, and each of them,

24  by the acts and misconduct alleged herein, violated the Consumers Legal Remedies Act, California

25  *Civil Code* §§ 1750 et. seq. (hereinafter "CLRA").

26   216.    Plaintiff hereby seeks injunctive relief as appropriate against Defendants, and each of

27  them, for their violations of California *Civil Code* §§ 1750 et. seq. The CLRA applies to Defendants'

28

37

1  actions and conduct described herein because it extends to transactions which are intended to result, or

2  which have resulted, in the sale of goods to consumers.

3      217.    Plaintiff is a "consumer" within the meaning of California *Civil Code* § 1761(d).

4      218.    Defendants have violated, and continue to violate, the CLRA in representing that goods

5  have characteristics and benefits which they do not have in violation of California *Civil Code* §

6  1770(a)(5).

7      219.    At all times herein alleged Defendants have committed acts of disseminating untrue and

8  misleading statements as defined by California *Civil Code* § 1770 by engaging in the following acts and

9  practices with intent to induce members of the public to purchase and use their products:

10          a.  Representing to Plaintiff, Plaintiff's physicians and the general public that their

11              products are and, at all relevant times, were safe, fit and effective for human

12              consumption, and that their products are just as safe, fit and effective as other

13              available alternative contraceptives, including other oral contraceptives, while

14              knowing that said representations were false, and concealing from Plaintiff,

15              Plaintiff's physicians and the general public that their products had an increased

16              propensity to cause injuries to users;

17          b.  Engaging in advertising campaigns designed to create the image, impression and

18              belief by consumers and physicians that the use of their products is and, at all

19              relevant times, was safe, had fewer side effects and adverse reactions than other

20              available alternative contraceptives, including other oral contraceptives, while

21              Defendants knew these representations to be false and, further, had no reasonable

22              ground to believe them to be true;

23          c.  Purposely downplaying and understating the health hazards and risks associated with

24              their products;

25          d.  Issuing promotional literature deceiving potential users of their products by relaying

26              only positive information and manipulating statistics to suggest that the risks of their

27              products were the same as those known to be associated with other oral

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1      contraceptives, while downplaying the known increase of adverse and serious health

2      effects and concealing material relevant information regarding the safety of their

3      products.

4      220.    The foregoing practices constitute false and misleading advertising and representations

5  within the meaning of California *Civil Code* § 1770. The acts of untrue and misleading statements by

6  Defendants described herein present a continuing threat to members of the public and individual

7  consumers in that the acts alleged herein are continuous and ongoing, and the public and individual

8  consumers will continue to suffer harm as alleged herein.

9      221.    Unless Defendants are enjoined from continuing to engage in these violations of the

10  CLRA, Plaintiff will continue to be harmed by the wrongful actions and conduct of Defendants.

11      222.    Pursuant to California *Civil Code* § 1780, Plaintiff seeks an order of this court for

12  injunctive relief calling for Defendants, and each of them, to cease such deceptive business practices in

13  the future.

14                              **RELIEF REQUESTED**

15      WHEREFORE Plaintiff prays for judgment against Defendants and, as appropriate to

16  each cause of action alleged and as appropriate to the standing of Plaintiff, as follows:

17      1.    Past and future general damages, the exact amount of which has yet to be ascertained, in

18  an amount according to proof at the time of trial and which will conform to proof at time of trial;

19      2.    Past and future economic and special damages according to proof at the time of trial;

20      3.    Loss of earnings and impaired earning capacity according to proof at the time of trial;

21      4.    Medical expenses, past and future, according to proof at the time of trial;

22      5.    Past and future pain and suffering damages, including mental and emotional stress

23  arising from Plaintiff's physical injuries, according to proof at the time of trial;

24      6.    Equitable relief as requested and/or as the Court deems just and proper;

25      7.    Declaratory judgment that Defendants are liable to Plaintiff for all future evaluative,

26  monitoring, diagnostic, preventative, and corrective medical, surgical, and incidental expenses, costs

27  and losses caused by Defendants' wrongdoing;

28

                                    39

8.    Medical monitoring, whether denominated as damages or in the form of equitable relief;

9.    Punitive or exemplary damages according to proof at the time of trial;

10.   Costs of suit incurred herein;

11.   Pre-judgment interest as provided by law; and

12.   Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, by her undersigned counsel, hereby demands a trial by jury on all counts in this Complaint and all issues so triable.

Dated: May 20, 2010

RESPECTFULLY SUBMITTED,
**ROBINSON, CALCAGNIE & ROBINSON**

By: _Mark P. Robinson, Jr._

Mark P. Robinson, Jr., Esq.
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
949-720-1288; Fax 949-720-1292
mrobinson@rcrlaw.net; drobinson@rcrlaw.net;
kkaravatos@rcrlaw.net; kschaeffer@rcrlaw.net;
slukei@rcrlaw.net